**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ALFREDO CARRANZA, JR.,<br><br>    Defendant. | 2:11-cr-00012-LDG-RJJ<br><br>**AMENDED**<br>**REPORT & RECOMMENDATION OF**<br>**UNITED STATES MAGISTRATE**<br>**JUDGE**<br><br>Defendant's Motion to Suppress for Fourth Amendment Violation (#11) |

This matter came before the Court for reconsideration of the previous Report and Recommendation (#36) following remand by the district judge. Order (#54). The court has reviewed all pleadings related to Defendant's Motion to Suppress (#11), as well as the testimony and evidence presented at the evidentiary hearing. The court now concludes and recommends that the Motion to Suppress (#11) should be granted based on the following:

**BACKGROUND**

Early on the morning on January 2, 2011, Officer Arthur Hawkins of the Las Vegas Metropolitan Police Department (LVMPD) was on patrol near the corner of Carson Avenue and 14th Street, an area he identified as a high crime area. While traveling south on 14th Street, he observed a tan Chevrolet Monte Carlo, which was stopped on Carson Avenue, pull into the westbound lane without signaling. Officer Hawkins turned onto Carson Avenue and followed the vehicle until he lost the vehicle at a stop light. A few minutes later, Officer Hawkins circled back around and observed the vehicle parked in the same or similar location.

Officer Hawkins approached the vehicle with emergency siren and lights activated He exited his patrol car, and spoke to the driver. Officer Hawkins asked the driver for his license and vehicle registration. When the driver, Alfredo Carranza, produced his identification, Officer Hawkins noticed that he appeared nervous and that his hands were shaking. Carranza also produced federal probation papers. Officer Hawkins then returned to his vehicle and ran a background check on Carranza. That check confirmed Carranza's probation status and showed that he had been convicted of selling narcotics and bribing a police officer. Officer Hawkins called for additional officers to support him at the scene and asked Carranza to step out of the vehicle. Officer Hawkins then conducted a pat down search of Carranza.

Officer Hawkins asked Carranza if he could search his vehicle and Carranza consented. During the search of his vehicle, Officer Hawkins discovered 59.2 grams of Methamphetamine in a plastic bag inside a Parmesan cheese container on the rear seat. Under the driver's seat, Officer Hawkins observed what was later identified as a .45 caliber Taurus handgun. After observing these items, Officer Hawkins directed supporting officers to place Carranza in handcuffs and contacted his sergeant and an ID specialist to process the handgun. Carranza was then placed under arrest and later indicted on two counts: felon in possession of a handgun and possession of a controlled substance with intent to distribute.

Carranza now seeks to suppress the evidence found in his vehicle alleging that LVMPD's search and seizure violated the Fourth Amendment to the United States Constitution. Carranza alleges that the stop was improper, that the consent he gave for the search was improper, and that the time for which he was detained was impermissibly long. The Government opposes the motion.

**DISCUSSION**

**I. The Traffic Stop**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

1  The decision to conduct an investigatory stop of an automobile does not violate this right where
2  the police have reasonable suspicion to support the stop. *United States v. Choudhury*, 461 F.3d
3  1097, 1100 (9th Cir. 2006). In determining whether an officer had reasonable suspicion to
4  conduct a traffic stop, the court must look at the totality of the circumstances to see whether the
5  detaining officer has a particularized and objective basis for suspecting unlawful conduct.
6  *United States v. Arvizu*, 534 U.S. 266, 273 (2002).
7        Here, Officer Hawkins stopped Carranza because he observed Carranza enter the highway
8  without signaling.  Officer Hawkins lost sight of the vehicle for a few minutes then observed the
9  vehicle once more parked in nearly the exact same location that he had initially observed.
10 Carranza argues that the stop was improper because his failure to signal did not constitute a
11 violation of Nevada traffic laws and because Officer Hawkins lost sight of the vehicle before
12 making his stop.  Therefore, Carranza argues, there was no reasonable suspicion for the officer to
13 conduct an investigatory traffic stop.
14       A.  Failing to Give an Appropriate Signal
15       In attempting to show that Officer Hawkins had a reasonable suspicion of unlawful
16 conduct, the Government relies on Nevada Revised Statutes (NRS) 484B.223(1)(b), which
17 provides that "[i]f a highway has two or more clearly marked lanes for traffic traveling in one
18 direction, vehicles must: (a) [b]e driven as nearly as practicable within a single lane; and (b) [n]ot
19 be moved from that lane until the driver has given the appropriate turn signal and ascertained that
20 such movement can be made with safety."  Government's Opp'n 3:5-9 (#17) (incorrectly cited as
21 NRS § 484.305(1)(b)).  However, this statute does not apply in this case for the simple reason
22 that Carson Avenue does not have two or more lanes "for traffic traveling in one direction."
23       At the end of the evidentiary hearing the government argued the application of NRS
24 484.343 [actually NRS 484B.413] as a basis for Officer Hawkins' stop of Carranza. This
25 argument was also included in the government's Supplemental Brief (#31) at 3-5 after the
26 evidentiary hearing. NRS 484B.413,  states that "[a] driver shall not turn a vehicle from a direct
27
28                                 3

course upon a highway unless and until such movement can be made with reasonable safety, . . . and after giving an appropriate signal if any other vehicle may be affected by such movement." However, this section also does not apply. Carranza was not operating his vehicle "upon a highway." An examination of another section of the Nevada Revised Statutes helps to illustrate why.

Nevada Revised Statutes 484B.410 states that "[a] person . . . shall not start a vehicle which is stopped, standing or parked on a highway nor enter upon a highway unless and until such movement can be made with safety."  While section 484B.413 seems to contemplate a lane change while the vehicle is already in motion, similar to NRS § 484.223, section 484B.410 describes a situation where a vehicle that has stopped on the side of a highway moves to reenter the highway.  Section 484B.413 requires that the driver signal before making a lane change, if such movement may affect any other vehicle.  NRS Section 484B.410 requires that a driver of a stopped vehicle seeking to enter the highway wait to do so until the movement can be done safely.  None of these sections apply to Carranza's situation.

Carranza's vehicle was stopped on the side of the road when Officer Hawkins first saw it. As Officer Hawkins turned from 14th Street onto Carson Avenue, Carranza moved into the traffic lane and traveled further down Carson Avenue.  Carranza's movement was done without incident and, therefore, seems to have been made "with safety."  NRS § 484B.410.  The Government cannot point to any section of the Nevada traffic laws that may have been violated by Carranza's actions.  Therefore, Officer Hawkins did not have reasonable cause to believe a traffic violation had occurred and the resulting traffic stop constitutes a violation of Carranza's Fourth Amendment rights.

B.  Terry Stop

The government argues in its Supplemental Brief (#31) at 5-6 that in the absence of a traffic violation Officer Hawkins "had reasonable suspicion to conduct an investigatory stop as allowed under Terry v. Ohio. The factual predicate for this argument is (1) "the defendant parked

4

in a high crime area very early in the morning" and (2) "the defendant's failure to utilize his signal light when pulling out onto Carson Avenue."

The latter is already eliminated as a basis for the stop and the former, standing alone does not establish a "particularized and objective basis for suspecting. . .criminal activity." To hold contrary would allow police stops of every vehicle in the neighborhood. That result would be untenable under the Constitution and existing case law.

### C.  Losing Sight of the Vehicle

Carranza further argues that Officer Hawkins did not have a reasonable suspicion to conduct a traffic stop because he never had a facial identification of the driver when he lost sight of the car for a few minutes.  Carranza states that Officer Hawkins did not have a reasonable suspicion to believe that he was the same driver who committed the alleged traffic infraction.  As the court has determined that Carranza's actions did not violate any Nevada traffic laws and, therefore, that there was no reasonable cause for the traffic stop, there is no need to address Carranza's argument concerning Officer Hawkins losing sight of the vehicle.

## RECOMMENDATION

Based on the foregoing and good cause appearing therefore,

IT IS THE RECOMMENDATION of the Defendant's Motion to Suppress for Fourth Amendment Violation (#11) be **GRANTED**.

## NOTICE

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the

District Court.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 28th day of October, 2011.

*(signature)*
ROBERT J. JOHNSTON
United States Magistrate Judge